UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MICHAEL DOUGLAS GRIFFITH, as owner of the M/V Wellcraft Center Console, ET AL. | § § § § | |
| Plaintiffs. | § § | |
| VS. | § | CIVIL ACTION NO. 3:19–CV–00053 |
| PAUL SANTILLAN, ET AL. | § § § | |
| Defendants. | § | |

## ORDER

Pending before the Court is Claimant Paul Santillan's Motion to Lift Stay of Limitation of Liability Proceeding ("Motion to Lift Stay"). *See* Dkt. 17. This motion was referred to this Court by United States District Judge George C. Hanks, Jr. *See* Dkt. 25. After careful consideration of the Motion to Lift Stay, the response, the reply, and the applicable law, the Court **DENIES** the Motion to Lift Stay.[1]

## BACKGROUND

On July 25, 2017, Claimant Paul Santillan ("Santillan") took part in a chartered fishing trip aboard the 2005 M/V Wellcraft Center Console Charter Boat (the "Vessel"). Santillan alleges that Michael Coleton Griffith operated the Vessel

---

[1] Petitioners have filed a Sur Reply without first seeking leave of court. In accordance with local court procedures, the Court will not consider the Sur Reply. *See* Local Procedure 4(C)(4) (stating that "[n]o further briefing, including supplements and sur-replies, should be filed without leave of Court. The Court will usually decline to consider such additional briefing.").

at a high rate of speed and in a negligent manner, causing Claimant Paul Santillan to fly upward several feet and off the boat seat. When Claimant came back down, he struck his back on his seat with the impact. Mr. Griffith then continued to operate the vessel in a negligent manner and at a high rate of speed, causing Claimant to fly upward a second time. As a result of Mr. Griffith's negligence, Claimant sustained severe personal injuries, including a compression fracture of his second lumbar vertebra.

Dkt. 17 at 1–2.

Petitioners Michael Douglas, Jr. and Lori Griffith, as owners of the Vessel, and Michael Coleton Griffith, individually and d/b/a Get Fishy Charters, as owner *pro hac vice* of the Vessel (collectively "Petitioners"), filed a Complaint and Petition for Exoneration From or Limitation of Liability in this Court. Petitioners also filed a Marine Surveyor's Certification Value that indicated that their interest in the Vessel amounted to $49,975.00. *See* Dkt. 1-3.

On March 14, 2019, this Court entered an Initial Order on Complaint for Exoneration From or Limitation of Liability which, among other things, stayed other actions pending the outcome of this limitation proceeding. *See* Dkt. 9. Santillan now asks the Court to lift the stay and allow him to litigate the liability and damage issues before a jury in a Texas state court. Santillan indicates that he wants to "file suit in state court against Galveston Fishing Charter Company, Galveston Fishing Charter, LLC and Island Mode, LLC." Dkt. 17 at 4. In connection with his request to dissolve the stay, Santillan filed a number of stipulations which he contends justify allowing him to proceed in state court.

# ANALYSIS

A shipowner facing potential liability for a maritime accident may file suit in federal court seeking protection under the Limitation Act, a statute that permits a shipowner to limit his/her liability for damages or injuries arising from a maritime accident to "the value of the vessel and pending freight." 46 U.S.C. § 30505(a). *See also In re Port Arthur Towing Co.*, 42 F.3d 312, 315 (5th Cir. 1995). "When a limitation action is filed by a vessel owner 'the federal district court stays all related claims against the shipowner pending in any forum, and requires all claimants to assert their claims in the limitation court.'" *Matter of Am. Commercial Barge Line LLC*, No. H-17-3841, 2019 WL 1202459, at *1 (S.D. Tex. Mar. 14, 2019) (quoting *In re Port Arthur Towing Co.*, 42 F.3d at 315).

"Thereafter, in a proceeding known as a *concursus,* the district court, sitting in admiralty without a jury, determines whether there was negligence; if there was negligence, whether it was without the privity and knowledge of the owner; and if limitation is granted, how the limitation fund should be distributed." *In re Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 755 (2d Cir. 1988) (internal quotation marks, brackets, and citation omitted). In this way the court can supervise the "marshalling of assets and the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full." *Id.* (internal quotation marks, brackets, and citation omitted).

Although "[f]ederal courts have exclusive admiralty jurisdiction of [limitation of liability] suits brought under the [Limitation] Act," the Savings to Suitors Clause found in 28 U.S.C. § 1333(1) provides claimants a choice of remedies and forums. *Magnolia*

3

*Marine Transport Co., Inc. v. Laplace Towing Corp.*, 964 F.2d 1571, 1575 (5th Cir. 1992). Specifically, Section 1333(1) gives federal district courts exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction," but "saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). Clearly, there is a natural tension between the Limitation Act's exclusive federal remedy and the Savings to Suitors Clause's "preference for jury trials and common law remedies *in the forum of the claimant's choice*." *Odeco Oil & Gas Co., Drilling Div. v. Bonnette*, 74 F.3d 671, 674 (5th Cir. 1996) (citation omitted) (emphasis added).

Courts across the country have struggled with how to reconcile the right of shipowners to limit their liability in federal court with the rights of claimants to sue in the forum of their choice. The Fifth Circuit has observed that "when a shipowner is not exposed to potential liability in excess of [the value of the vessel and its freight], the shipowner's absolute right to limit its liability is not implicated and 'the saving-to-suitors clause dictates that the admiralty court *must* allow suits pending against the shipowner in a common law forum, in this case the state court, to proceed.'" *In re Port Arthur Towing Co.*, 42 F.3d at 316 (quoting *Magnolia Marine Transport*, 964 F.2d at 1575).

To that end, there are two instances where a federal court must allow a state court action to proceed:

> (1) when the total amount of the claims does not exceed the shipowner's declared value of the vessel and its freight, and (2) when *all claimants* stipulate that the federal court has exclusive jurisdiction over the limitation proceeding, and that the claimants will not seek to enforce a damage award greater than the value of the ship and its freight until the shipowner's right to limitation has been determined by the federal court.

4

*Odeco Oil & Gas Co.*, 74 F.3d at 674 (citation omitted)

The first scenario does not apply in this case. Santillan has demanded $1 million for his alleged personal injury damages. This amount far exceeds the declared value of the Vessel at less than $50,000.00. To proceed in state court, Santillan must rely on the second exception, which requires all claimants to enter into a stipulation that would protect the shipowner's right to limit its liability.

If Santillan were the only claimant, this would be a relatively easy case. When a lone claimant brings an action seeking an amount in excess of the value of the vessel and its freight, a district court is required to lift the stay against state court proceedings if the claimant concedes the federal court's exclusive jurisdiction to hear and decide all issues relating to the limitation of liability. *See Inland Dredging v. Sanchez*, 468 F.3d 864, 867 (5th Cir. 2006) (holding that "a single claimant's choice of forum is a sufficient interest to warrant the dissolution of an injunction if the claimant files stipulations that adequately protect the shipowner's rights under the [Limitation] Act.").

This case, however, took a giant turn when, on June 18, 2019, Galveston Fishing Charter, LLC and Island Mode LLC d/b/a Galveston Fishing Charter Company (collectively, the "Galveston Fishing Entities") filed a claim for indemnity and contribution against Petitioners. *See* Dkt. 31 at 7. This pleading is significant because the Fifth Circuit has expressly found on numerous occasions that "cross-claims for indemnity and contribution are liabilities that must be addressed in order to protect the shipowner's rights under the Limitation Act" and, "[t]herefore, parties seeking indemnification and contribution from a shipowner must be considered claimants within the meaning of the

5

Limitation Act." *Odeco Oil & Gas Co.*, 74 F.3d at 675 (citation omitted). *See also In re ADM/Growmark River Sys., Inc.*, 234 F.3d 881, 886 (5th Cir. 2000) (recognizing that "parties seeking indemnification and contribution from a shipowner must be considered claimants within the meaning of the Limitation Act") (citing *Odeco Oil & Gas Co.*, 74 F.3d at 675); *In re Port Arthur Towing Co.*, 42 F.3d at 316 (recognizing that "a 'claimant' in this context includes a codefendant who is asserting a cross claim for indemnification, costs, and attorneys' fees") (citation omitted). Thus, the Galveston Fishing Entities are unquestionably considered "claimants" under the Limitation Act. The filing of the Galveston Fishing Entities' claim for indemnity and contribution against Petitioners turned this case from a single claimant case to a multi-claimant case.

To date, none of the Galveston Fishing Entities have stipulated to the conditions necessary to safeguard Petitioners' limitation rights. In the Court's view, as well as in the eyes of the Fifth Circuit, the Galveston Fishing Entities' failure to join or otherwise agree to be bound by any stipulations is dispositive on the stay issue. As the Fifth Circuit has stated in no uncertain terms: "In order for claims to proceed in state court after an exoneration or limitation action has been filed in federal court, *all claimants* must sign a stipulation protecting the vessel owner's rights under the Limitation Act." *In re ADM/Growmark River Sys., Inc.*, 234 F.3d at 885–86 (citations omitted). Because all claimants in this case have not agreed to stipulations as to the shipowner's right of limitation, the Court is strictly prohibited from lifting the stay. *See Odeco Oil & Gas Co.*, 74 F.3d at 675 (finding that a district court abused its discretion by allowing a state court

6

action to proceed in the absence of a stipulation, agreed to by all claimants, protecting the shipowner's right to limitation).

The Court is fully aware of the unique posture of this case. A week ago, before the Galveston Fishing Entities filed a claim for indemnity and contribution, an order lifting the stay would have been appropriate. This Court was actually preparing an order to lift the stay. But once the claim for indemnity and contribution appeared on the docket sheet, the whole landscape changed. At first blush, this outcome may seem unfair. Why, Santillan is sure to ask, should Petitioners be allowed to avoid a state court forum simply because the Galveston Fishing Entities have filed an eleventh-hour cross-claim for indemnity and contribution and then refused to agree to some stipulations? Santillan's ire is understandable, but the Fifth Circuit has provided an answer to this question:

> This rule is a prudent attempt to balance the inherent conflict between the Limitation Act and the savings to suitors clause. Although the claimants' interest in litigating in the forum of their choice is substantial, we will accede to that choice only *if* it is accompanied by stipulations fully protecting [the shipowner's] right to limit liability and agreeing to abide by an admiralty court determination of the right to limit. The shipowner's right to limitation takes precedence over the claimant's rights to proceed in the forum of their choice.

*Odeco Oil & Gas Co.*, 74 F.3d at 675 (internal quotation marks and citation omitted).

In sum, Petitioners' statutory right to limited liability is jeopardized by Galveston Fishing Entities' cross-claim for indemnity and contribution. As such, the Court's hands are tied. Controlling authority requires the Court to deny the request to lift the stay. Of course, if *all claimants* agree to appropriate stipulations protecting Petitioners' rights under the Limitation Act, the Court will revisit the issue.

7

SIGNED at Galveston, Texas, this 20th day of June, 2019.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE