UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MICHAEL DOUGLAS GRIFFITH, as owner of the M/V Wellcraft Center Console, ET AL. | § § § § | |
| Petitioners. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:19–CV–00053 |
| PAUL SANTILLAN, ET AL. | § § § | |
| Claimants. | § | |

## ORDER

Before me is a request that I order Claimant Paul Santillan ("Santillan") to submit to an independent medical examination pursuant to Federal Rule of Civil Procedure 35 ("Rule 35"). *See* Dkt. 37. After reviewing the parties' written submissions, hearing oral argument, and reviewing the applicable case law, I believe an independent medical examination ("IME") is appropriate in this case.

## BACKGROUND

This lawsuit arose from an incident that occurred during a fishing trip aboard the M/V Wellcraft Center Console Charter Boat (the "Vessel") in the summer of 2017. According to Santillan, the driver of the Vessel accelerated to a very high rate of speed, hit the wake of a wave, and launched Santillan, a passenger on the Vessel, out of his seat. When Santillan landed back on the Vessel, he says that he struck the seat extremely hard, suffering immediate pain and injuries to his neck, lower back, and tailbone area. Santillan further alleges that the driver continued to operate the Vessel in a negligent manner and at

a high rate of speed, causing him to fly upward a second time, further aggravating his injuries.

Petitioners Michael Douglas, Jr. and Lori Griffith, as owners of the Vessel, and Michael Coleton Griffith, individually and d/b/a Get Fishy Charters, as owner pro hac vice of the Vessel (collectively "Petitioners"), invoked this Court's admiralty jurisdiction by filing a Complaint and Petition for Exoneration From or Limitation of Liability. Santillan timely filed a claim seeking damages for personal injuries he allegedly sustained as a result of the incident.

Petitioners have requested that Santillan undergo an IME with Dr. Michael Kaldis, a Board-Certified orthopedic surgeon. Santillan has objected to the request for an IME, claiming that Petitioners have failed to establish good cause for conducting such an examination.

## ANALYSIS

Rule 35 provides that a district court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." FED. R. CIV. P. 35(a). Such an order may be made "only on motion for good cause and on notice to all parties and the person to be examined." *Id.*

Although an order for a physical examination is not automatically granted in all cases, district courts in the Fifth Circuit have uniformly held that Rule 35(a) should be construed liberally in favor of granting discovery. *See, e.g., Valenzuela v. Willete*, No. 5:14-cv-00062, 2015 WL 12843209, at *1 (S.D. Tex. May 15, 2015); *Lahr v. Fulbright & Jaworski, LLP*, 164 F.R.D. 204, 207 n.1 (N.D. Tex. 1996). Ultimately, the decision on

2

whether to order an IME is left to the sound discretion of the district court. *See Teche Lines v. Boyette*, 111 F.2d 579, 581 (5th Cir. 1940).

"Rule 35, as contrasted with the other discovery provisions, is distinct in its requirements that the party requesting such a mental or physical examination must affirmatively establish that the condition is 'in controversy' and 'good cause' exists for the examination, two requirements which are 'necessarily related.'" *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 391 (S.D. Tex. 2013) (citation omitted). All the requirements under Rule 35(a) are satisfied in this case.

## A. SANTILLAN'S CONDITION IS "IN CONTROVERSY"

It is undisputed that Santillan's medical and physical condition is "in controversy." Indeed, Santillan has put his medical and physical condition at issue by asserting a negligence claim. *See Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964) ("A plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy.") (citation omitted). A cursory glance at Santillan's Answer, Affirmative Defenses, and Claim for Damages clearly reflects that Santillan's medical and physical condition are of critical importance to his personal injury claim:

- "As [a] result of Mr. Griffith's negligence, [Santillan] sustained severe personal injuries, including a compression fracture of his second lumbar vertebra." Dkt. 12 at 2

- "Due to the gravity of the injuries stated above, [Santillan] has had to seek reasonable and necessary medical care and attention, and this has caused [Santillan] to incur reasonable and necessary medical expenses for the treatment of [Santillan's] injuries." *Id.* at 8.

- "In all likelihood, based upon a reasonable medical probability, [Santillan] will require reasonable and necessary medical treatment

3

- and incur reasonable and necessary medical expenses into the future." *Id.*

- "Further, [Santillan] would show he has suffered physical pain and mental anguish as a result of this incident. Such physical pain and mental anguish in all reasonable medical probability will continue into the future, if not permanently." *Id.*

- "Further, [Santillan] would show [he] has suffered physical impairment as a result of this incident. Such physical impairment in all reasonable probability will continue into the future, if not permanently." *Id.*

Accordingly, I find that Petitioners have established that Santillan's physical condition is "in controversy."

## B. PETITIONERS HAVE SHOWN "GOOD CAUSE"

Turning to "good cause," Petitioners must show specific facts that demonstrate a need for the information expected to be derived from the examination. *See Schlagenhauf*, 379 U.S. at 118. Petitioners contend that Santillan's medical records establish a significant medical history, including 10 orthopedic surgeries due to football-related injuries. It is imperative, Petitioners argue, for a doctor to examine Santillan and assess the cause of his current injuries and determine whether Santillan, as he alleges, will face future physical impairment and medical expenses.

In opposing an IME, Santillan argues that "[t]here is no good cause for Dr. Kaldis to examine Mr. Santillan because there are less invasive ways that your clients can learn about [Santillan's] medical conditions: you have access to all of [Santillan's] medical records and radiology films. . . . You can also have Dr. Kaldis watch the videotaped deposition of [Santillan]." Dkt. 37 at 2. This argument is completely unpersuasive. It

4

seems incredibly obvious that "[a] review of cold medical records is [simply] no substitute for an in-person examination by a doctor." *Hasan v. McCormack Baron Mgmt., Inc.*, No. 18-7779, 2019 WL 2122978, at *2 (E.D. La. May 15, 2019). Stated succinctly, it is patently unfair for Santillan to stand in the way of an IME when he has filed a personal injury lawsuit seeking to recover more than $1 million in damages. This is especially true when there is a treating orthopedic physician that Santillan expects to call to testify at trial to help establish his medical condition and alleged damages. As Petitioners correctly note: "[G]ood cause exists for the [Petitioners] to have an equal opportunity to evaluate his medical and physical condition." Dkt. 40 at 1. I believe the purpose of Rule 35 is to provide a level playing field, and that goal would be torn asunder if Santillan's doctor was permitted to conduct a physical examination while Petitioners' doctor was not. Additionally, there is no possible harm or prejudice that could result from ordering an IME in this case. To me, this is an easy call. Both parties acknowledge that Dr. Kaldis is qualified to conduct an orthopedic examination, and Petitioners should be permitted to select their preferred expert witness to conduct the examination. *See Powell v. United States*, 149 F.R.D. 122, 124 (E.D. Va. 1993) ("[A]bsent a 'valid objection' to the physician defendant chooses [to perform the Rule 35 physical examination], the defendant's choice is to be respected."); *Looney v. Nat'l R.R. Passenger Corp.*, 142 F.R.D. 264, 265 (D. Mass. 1992) ("[P]laintiff's ability to object to an expert physician chosen by the defendant [under Rule 35] should be rather limited with any questions of bias or prejudice of either side's chosen expert being left to full exploration at trial.").

At oral argument, Santillan suggested that I should refrain from ordering an IME at this time because of the unique nature of a maritime limitation of liability action. In particular, Santillan asks that I wait to address the IME issue until after the Court makes a determination as to whether the Vessel owner may limit liability. Although creative, Santillan's argument is misplaced. Under the Limitation of Liability Act, a vessel owner may limit his liability to "the value of the vessel and pending freight." 46 U.S.C. § 30505(a). The Supreme Court has described in great detail the procedure a trial court should follow in a limitation of liability action.

> The procedure for a limitation action is now found in Supplemental Admiralty and Maritime Claims Rule F. Much like its predecessor provisions, Rule F sets forth the process for filing a complaint seeking exoneration from, or limitation of, liability. The district court secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims. In these proceedings, the court, sitting without a jury, adjudicates the claims. The court determines whether the vessel owner is liable and whether the owner may limit liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants.

*Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 448 (2001). A bifurcation of the limitation and personal injury claims is proper "where a single claimant sues a shipowner in state court and the owner files a petition for limitation of liability in federal court." *In re Tetra Applied Techs. LP*, 362 F.3d 338, 340 (5th Cir. 2004). The situation is complicated, however, when a limitation action involves multiple claimants, as it does here. The Fifth Circuit has held that claims involving multiple claimants "may proceed outside the limitation action (1) if they total less than the value of the vessel, or (2) if the claimants stipulate that the federal court has exclusive jurisdiction over the limitation of

6

liability proceeding and that they will not seek to enforce a greater damage award until the limitation action has been heard by the federal court." *Id.* at 341 (internal quotation marks and citation omitted). Neither of these scenarios is present in this case. In fact, I have already rejected Santillan's effort to allow him to pursue his personal injury claim in state court. *See Griffith v. Santillan*, No. 3:19-cv-00053, 2019 WL 2543819 (S.D. Tex. June 29, 2019). Most federal courts handling both limitation and personal injury claims try the issues together in the name of judicial economy, and the practice followed in the Galveston federal courthouse is no different. Because the limitation of liability action and the personal injury claim will be tried together in a federal forum, there is no reason to delay the Rule 35 physical examination to which Petitioners are clearly entitled. *See, e.g., In re Marquette Transp. Co. Gulf-Island, LLC*, No. CIV.A. 13-6351, 2014 WL 3891760, at *4 (E.D. La. Aug. 7, 2014) (permitting a Rule 35 physical examination to proceed in a limitation of liability action); *In re Bordelon Marine, Inc.*, No. 11-173, 2012 WL 1902576, at * 2 (E.D. La. May 25, 2012) (same); *Matter of Arosita Shipping Co., Ltd.*, No. CIV. A. 92-3181, 1993 WL 205088, at *2 (E.D. La. June 7, 1993) (same).

## CONCLUSION

Santillan claims that he suffered injuries as a result of the accident that forms the basis of this lawsuit. These allegations expressly put his physical condition in controversy and provide Petitioners with good cause for an examination under Rule 35 to determine the existence and extent of those alleged injuries. I, therefore, order that Dr. Michael Kaldis be permitted to conduct a physical examination of Santillan in accordance with Rule 35. The parties are to confer on a convenient date, time, and place for the physical examination.

If the parties cannot agree, they must let me know and I will unilaterally pick a date, time, and place for the examination.

SIGNED at Galveston, Texas, this 21st day of October, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE